CATHARINE E. MOORE, as Administratrix, etc., of MARTIN MOORE, Deceased, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Railroads — negligence — signals on approaching a crossing — affirmative and negative evidence — testimony of employees.*

While affirmative evidence of the fact that a signal was given at, and for some distance before reaching a street crossing, on the approach of a train, may seem more potent than the testimony of persons to the effect that they did not hear it or that no such signal was given, yet, when the evidence of the latter tends to prove that their attention at the time was directed or called to the fact, and the omission to give any signal was particularly observed by them, the question is one for the jury to determine.

Although the employees of a defendant railroad company, engaged in running an engine, who testify on behalf of the company that signals were given on approaching a crossing, have at least as good an opportunity as any other person can have to know whether such signal was given, their relation to the company is a circumstance which the jury is permitted to take into consideration in determining a disputed question of fact as to whether or not a signal was given.

On the trial of an action brought to recover from a railroad company damages resulting from the death of a person caused by his being struck by an engine while attempting to cross the tracks of a railroad at a street crossing, the evidence upon the questions of the defendant's negligence and of the decedent's care was conflicting. The jury rendered a verdict for the plaintiff.

*Held,* on appeal from an order denying the defendant's motion for a new trial, that whether the requisite signal was given of the approach of the train sufficient to advise thereof a person on the street exercising due care, and whether or not the deceased exercised such care for his protection, were, under the circumstances, questions of fact for the jury and were properly submitted to it;

And that the view which the jury was authorized to and might have taken of the evidence was such that the court could not see that its conclusion was so much against the weight of it as to justify an interference with the verdict.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from an order of the Supreme Court, made at the Ontario Circuit and entered in the office of the clerk of Ontario county on the 29th day of May, 1893, denying the defendant's motion for a new trial made upon the minutes after a verdict for $4,000 had been rendered in favor of the plaintiff.

*J. W. Dunwell,* for the appellant.

*John Gillette,* for the respondent.

Bradley, J.:

The plaintiff's intestate was struck by the engine of a passenger train on the defendant's road at the crossing of East street, in the village of Canandaigua, and killed, December 10, 1891. The plaintiff charges that his intestate's death was occasioned solely by the negligence of the defendant. And as to both the question of the negligence of the defendant, and that of care on the part of the decedent, there is a conflict in the evidence introduced by the parties respectively. He was riding and driving in what is commonly known as a one-horse democrat wagon, and going southerly upon East street and passed onto the railroad track, where his wagon was struck by a train moving westerly, with the result before mentioned. The evidence on behalf of the plaintiff tended to prove that no signal was given of the approach of the train, that no whistle was sounded and no bell rung until just at or immediately preceding the collision. There was much evidence upon the subject. The daughter, two sons and the son-in-law of the deceased were at the house of the latter, which was on higher ground than the railroad track and 625 feet north of it and 710 feet northeasterly from the crossing on East street. They testify that they were in a situation at the time to hear the signal given, if one had been given; that they heard none on the approach of the train; and the daughter and one of the sons testified that their attention was then called to the fact that no whistle or bell was sounded when they saw the train approaching, as the deceased had shortly before left the house to go home and on his way would pass over the crossing in question, and that to enable the son to observe the movement of the train and the progress of his father, he climbed into a tree where he could see both. The fact that he did so was corroborated by the evidence of the others at the house. Two passengers on the train who were in the smoking car testify that they heard no signal, bell or whistle, until just at the time of the collision. They were sitting together, and one of them testified that before this on the train he had noticed signals by whistles given in coming into towns; that he knew the train was coming into Canandaigua, knew where the station was, and the fact that there was no signal given attracted his attention, and that no signal was there given until a moment before the accident; that it was given at the time or an instant before the air brakes were

applied; that "They didn't blow the long whistle for Canandaigua station until after the accident or a second before the accident." On the contrary, the engineer, conductor and two trainmen testify that the whistle was sounded for some considerable distance before reaching the crossing; the engineer said between 300 and 400 feet, and one of the trainmen said that he thought it was 400 or 500 feet east of the crossing. And the fireman testified that he rang the bell; commenced ringing it some 300 or 400 feet east of the crossing. Another witness called by the defendant testified that he was on his way from his residence on Gorham street, which crosses East street north of the crossing in question, and was going easterly on Gorham street, and after passing East street, and when he came along where Kimball resided, he saw the smoke stack of the train and heard the whistle as it approached the crossing; that it was a long whistle; commenced to sound as he judged a quarter of a mile from Kimball's place; that the whistle continued about three or four seconds and stopped before the train reached the crossing, and when it got to the box cars, which will hereafter be more particularly referred to; being asked on his cross-examination "Was there a signal from those cars that you heard when it came along by those box cars? Ans. I don't remember nothing. I couldn't see the train when it got behind those box cars at all; you might see the stack. Q. You couldn't tell there was a train coming except for that, could you? Ans. No, sir." And one Mason Mills, a passenger on his way from Phelps to Canandaigua, testified that he was in the smoking car, and that as the train approached this crossing he heard a whistle, a long whistle; that he could not say how far it was from the crossing; it may have been a 100 rods; that he would not say it was that distance, and that "it blew four or five seconds, somewhere along there." Such is substantially the evidence upon the question whether a signal was or was not given of the approach of the train to the crossing, upon which the intestate proceeded in front of the engine. Affirmative evidence of the fact that a signal was given at, and for some distance on, the approach of a train may apparently seem more potent than that of persons to the effect that they did not hear it or that no such signal was given, yet when the evidence of the latter tends to prove that their attention at the time was directed or called to the fact, and the omission to

give any signal was particularly observed by them, the question is one for the jury to determine. And while the persons on and running the engine have at least as good opportunity to know as any other person can have, whether or not the signal was given in the present case, their relation to the defendant was a circumstance which the jury were also permitted to take into consideration in determining the disputed question of fact. The evidence of the employees of the defendant was that the train was running at the rate of twenty-five or thirty miles an hour, and the speed was estimated as being greater by one or more other witnesses. It seems that East street is within and the eastern boundary of the village of Canandaigua and that the yard of the defendant extends a considerable distance east of that street, and the railroad station or depot is some distance west of it. The train was running about on its regular time on its approach to the street, being due at the station at twelve-fifty P. M. The day was clear. The deceased was familiar with the crossing, and unless his view was interrupted by the defendant's cars standing upon a track north of that on which the train was moving, he could, by looking, have seen its approach. It appears that at the crossing there were three tracks; that the northern one was a branch track; the middle one, seven feet from it, was that on which the train was coming; that the next track south is that of the Northern Central railway. The branch track before mentioned, and from 150 feet east of the crossing five other tracks, extend east 2,900 feet from East street. Upon the most northerly one of the tracks some cars were standing at the time of the accident, and it is claimed on the part of the plaintiff that they obstructed the view of the train by the deceased as he approached the railroad. After leaving Kimball's house he drove southwesterly into and along Gorham street into East street, thence southerly 543 feet in that street to the crossing, and the evidence on the part of the plaintiff tends to prove that there were cars upon the branch track extending from a point twenty-five feet east of the street a long distance east, and that they at the time shut off the view of the deceased of the train as he was going south to the crossing. The fact that cars were standing on that track is not questioned, but the controversy in that respect has relation to their location, and as to how continuous the line of them was. The defendant introduced evidence to the effect that the nearest one was 150 feet from the

crossing; that the first one was a gondola car thirty-four feet long, then five box cars, altogether occupying a space of about 200 feet in length on the track; that then east therefrom there was an opening of considerable distance to other cars, and so on, cars and openings between them, so that a person passing down East street could see the train as it passed these openings without any obstruction to his view; that the gondola was only about eight feet high and could not prevent any one seeing the train, and that the smoke stack could be seen over the box cars by a person on the street until he was within fifty or sixty feet of the track.

It is reasonable to suppose that when the plaintiff's intestate drove upon the track he was unaware of the danger he there encountered. And if by the exercise of due care he could have been advised of the approach of the train and avoided the collision, he was chargeable with contributory negligence, and the defendant is not liable for the consequences of it. His situation required him to look and listen, to use his faculties in approaching the railroad track to ascertain whether with safety he could pass over it. The plaintiff had the burden of proving that the decedent was free from negligence in that respect. Upon that subject the son of the decedent testified that otherwise being unable to see his father, he got into the tree as before mentioned, from where he could see him as he passed down the street to the crossing; that his father was then twenty or thirty feet from the crossing; that he was driving the horse on a walk and looking both ways; that he was looking up the track and down the track, and that the witness heard the whistle of the engine just as it struck him. The witness Mills, before referred to, and who was called on the part of the defense, testified that he saw from the car in which he was sitting a man approaching the East street crossing in a wagon. As represented by the record before us, he testified, and repeated it on his cross-examination, that when he first saw him the man was about 150 rods from the crossing, and added that he couldn't tell that he saw him through openings between cars, by which his view was shut off once in a while; that he kept watch of him until he got near the crossing; that he saw him approach to four or five rods from the crossing, might have been closer; that "up to the time he came onto that

crossing he had his head down; set with his chin down on his chest. He was looking straight ahead. I didn't see no stir of his head." Assuming that this witness was testifying intelligently, he could not have intended to be understood as saying that the decedent was about 150 rods from the crossing when he first saw him. The distance from Kimball's house to the crossing from which Moore came, was, by the streets, less than 1,200 feet; there was some opportunity to criticise the testimony of this witness as the record represents it as given by him.

Whether the requisite signal was given to advise a person on the street, exercising due care, of the approach of the train to the crossing, and whether or not the deceased exercised such care for his protection, were, under the circumstances furnished by the evidence, questions of fact for the jury, and properly submitted to it. They were from it permitted to find that the death of Moore was caused by the negligence of the defendant, and without any contributory negligence on his part. And the view which the jury were authorized to take and may have taken, of the evidence, is such that the court cannot see that its conclusion was so against the weight of evidence as to justify interference upon this appeal with the verdict either in respect to the questions upon which the liability of the defendant was dependent, or as to the amount of damages awarded by it to the plaintiff. There seems to have been no error in the rulings at the trial.

The order denying the motion for a new trial should be affirmed.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Order appealed from affirmed.